IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLY H.,[1]                                       6:17-cv-01705-BR

        Plaintiff,                        OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

        Defendant.


**KATHERINE EITENMILLER**
**MARK A. MANNING**
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

---

[1] In the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, this Opinion and Order uses only the first name and the initial of the last name of the nongovernmental parties. The same designation will be used to identify nongovernmental family members named in this case.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**HEATHER L. GRIFFITH**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S 221A
Seattle, WA 98104-7075
(206) 615-3709

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Kelly H. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Remand, **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed applications for DIB and SSI on August 10, 2012, alleging a disability onset date of January 31, 2010.

2 - OPINION AND ORDER

Tr. 156-59.[2] The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 17, 2016. Tr. 33-62. At the hearing Plaintiff was represented by an non-attorney representative. Plaintiff and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on May 6, 2016, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 20-32. Pursuant to 20 C.F.R. § 404.984(d) that decision became the final decision of the Commissioner on September 12, 2017, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on May 2, 1979, and was 37 years old at the time of the hearing. Tr. 159. Plaintiff has a high-school education. Tr. 191. Plaintiff has past relevant work experience as a mobile-home utility worker, carpet-layer, and courtesy clerk. Tr. 56.

Plaintiff alleges disability due to "severe back muscle spasms." Tr. 71.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical

---

[2] Citations to the official transcript of record filed by the Commissioner on May 22, 2018, are referred to as "Tr."

records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 24-26.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)). The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*,

574 F.3d at 690).  The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

5 - OPINION AND ORDER

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

6 - OPINION AND ORDER

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his January 31, 2010, alleged onset date.  Tr. 22.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease of his lumbar spine and asthma.  Tr. 22.  The ALJ found Plaintiff's impairment of left-lateral epicondylitis is not severe.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.

Tr. 23. The ALJ found Plaintiff has the RFC to perform sedentary work except "postural activities would be performed at a frequent level, and no concentrated exposure to airborne irritants such as dust, fumes, gasses, and odors." Tr. 23.

At Step Four the ALJ concluded Plaintiff cannot perform his past relevant work. Tr. 27.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 27. Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony and (2) gave "partial weight" to the opinion of examining physician Christopher Carey, D.O.

**I. The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of

8 - OPINION AND ORDER

symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he was unable to work due to severe back pain and spasms.  Plaintiff stated "lately" he has been having "particularly bad" back spasms twice per week. Tr. 42.  Plaintiff noted he takes only Flexeril for his back pain and spasms because he has a "weak stomach [and] none [of the other medications he has tried] agree[] with" his stomach.  Tr. 43. Plaintiff also uses a "tens" unit that "relaxes [his] nerves" but does not "touch[] that dull, sharp pain that's right in [his] lower back."  Tr. 43.  Plaintiff also has "pain radiating down [his] left leg into [his] calf" that feels like a "burning sensation like someone . . . has a lighter on [his] calf."  Tr. 43.  Plaintiff explained

9 - OPINION AND ORDER

his insurance will not cover a "nerve root shot" to treat his pain nor will it cover surgery for his back pain. Tr. 44. Plaintiff also noted, however, that his neurosurgeon did not recommend surgery for Plaintiff's condition.

Plaintiff rated his pain on a good day as a seven on a scale of one-to-ten and on a bad day as a ten. On a good day Plaintiff's pain limits his ability to kneel, to lift, to walk, or to stand for "long periods." Specifically, on a good day Plaintiff can walk for 30 minutes, stand for 20 minutes, and lift a gallon of milk. On a bad day Plaintiff cannot do anything. For example, on a bad day Plaintiff cannot lift a gallon of milk because he is "all seized up." Tr. 53. Plaintiff has bad days "almost daily, every other day." Tr. 48.

Plaintiff stated his spasms occur randomly and have been brought on in the past by things such as bending over to brush his teeth, doing dishes, sneezing, and getting up and down off the toilet. Tr. 47. Plaintiff also noted he does not sleep well due to his pain level. Plaintiff sleeps for "a couple hours" and then has to get out of bed and move to a chair. Tr. 50.

Plaintiff testified he is still able to drive a car, but sometimes his father has to help him drive and grocery shop because Plaintiff gets "rummy" and is afraid to drive when he takes Flexeril. Tr. 51.

Plaintiff stated he did not believe he could do a job that

10- OPINION AND ORDER

required him to put shoes in shoeboxes for eight hours a day with two 15-minute breaks and a 30-minute lunch even if he was permitted to sit and to stand throughout the day because his back would hurt "worse and worse" as the day went on. Tr. 52. Plaintiff noted he might be able to perform such a job for one day, but then he would experience pain and would be off the job for two days.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent" with the evidence. Tr. 24. Specifically, the ALJ noted Plaintiff alleged his disability began in January 2010, but the record does not reflect any significant reports of back pain until October 2010.

On October 27, 2010, Plaintiff reported he began to suffer back pain after he did some yard work and debris cleanup. Adnan Misellati, M.D., recommended physical therapy and prescribed a muscle relaxer. Tr. 274. Plaintiff, however, did not follow up with a physical therapist and did not report back pain to any physician on record until October 2011. In fact, Plaintiff was seen for a possible UTI in May 2011, and at that time Plaintiff reported pain at level 0 on a scale of 0-10. Tr. 267.

On October 4, 2011, Plaintiff reported to Steven Yoder, M.D., with back spasms and pain related to laying carpet. Tr. 264. Plaintiff stated he had tried Flexeril, but it did not help and medical

11- OPINION AND ORDER

marijuana seemed to work best. Dr. Yoder noted Plaintiff "can flex his back really well, almost can curl into a ball. He can extend normally. There is no stiffness at all." Tr. 264. Dr. Yoder noted Plaintiff had "some mild tenderness in the lower lumbar and sacroiliac areas," but he had "good strength in both lower extremities [and] his gait is normal." Tr. 264.

In February 2012 Plaintiff reported experiencing lower-back pain and exhibited some decreased range of motion, but his lower-extremity muscle strength remained at 5/5 bilaterally. Tr. 261. In March 2012 Plaintiff reported experiencing pain in his left elbow and noted he "may have overdone it weight lifting." Tr. 258.

The record does not contain any record of Plaintiff reporting back pain until September 2012 when he told Mark Lyon, M.D., that he was suffering chronic, recurrent low-back pain with spasms. Plaintiff stated he was feeling pain at a level of 7 out of 10. Dr. Lyon noted Plaintiff's range of motion was fair, and he had 5/5 lower-extremity strength, "symmetrical 3+ reflexes," and "no red flag symptoms." Tr. 255. Dr. Lyon noted he would check Plaintiff's x-ray, but "suspects it will not be too bad." Dr. Lyon recommended an anti-inflammatory and declined to prescribe oxycodone because Plaintiff was using medical marijuana.

In December 2012 Plaintiff reported to Dr. Yoder that he was experiencing lower-back pain at level 5 out of 10, but the pain did

12- OPINION AND ORDER

not radiate into his legs. Dr. Yoder noted Plaintiff did "not appear to be in a lot of pain. He easily [got] up from a chair, can bend almost 90 degrees. He has good plantarflexion, dorsiflexion of his feet. Gait is normal." Tr. 247.

The record does not contain any significant treatment for back pain in 2013.

In January 2014 Plaintiff reported to urgent care with mid-back pain that began after Plaintiff lifted "a heavy flowerpot." Tr. 297. Plaintiff noted his pain was worse when he bent or lifted, but he did not have pain radiating down his legs. The urgent-care doctor prescribed stretching, avoiding heavy lifting, ibuprofen for two weeks, and 10 tablets of oxycodone.

In July 2014 Plaintiff reported to Dr. Yoder that he had been experiencing lower-back pain at a level of 5 out of 10 for a month. Plaintiff advised Dr. Yoder that ibuprofen and medical marijuana did not help. Dr. Yoder noted Plaintiff had decreased range of motion, but he had normal strength, reflexes, and gait.

In April 2015 Plaintiff reported to Dr. Yoder with "continued left leg pain that radiates from his lower back down to the left lateral calf and has been present for 4-5 months and is getting progressively worse." Tr. 306. Dr. Yoder noted Plaintiff had slight tenderness in his left lower back and straight-leg raising causes low-back pain and some pain going down Plaintiff's left leg. Tr. 307. Plaintiff had normal plantar flexion and dorsiflexion of

13- OPINION AND ORDER

his feet.

In December 2014 Plaintiff reported "worsening symptoms of left lower back pain and leg pain. Worse in last 4 weeks." Tr. 309. Plaintiff stated he had new "burning pain of left leg and into his left calf." Tr. 309. Plaintiff stated he was not experiencing pain relief with Flexeril or medical marijuana. The nurse practitioner recommended physical therapy and stretching.

In June 2015 Plaintiff had an MRI that indicated mild degenerative changes of the lower lumbar spine, right foraminal narrowing at L4-L5, and mild bilateral lateral recess narrowing at L5-S1. Erik Hauck, M.D., noted Plaintiff did not have major disc herniation or focal weakness. Dr. Hauck noted Plaintiff has "some disc degenerative changes at L5-S1 and mode changes consistent with arthritis," but Plaintiff was not "a candidate for surgical intervention." Tr. 324. Dr. Hauck recommended steroid injections, but Plaintiff's insurance has not approved them.

Plaintiff was seen by a physical therapist in August 2015 and again in October 2015. In October, however, the physical therapist noted Plaintiff was discontinuing physical therapy even though he still reported experiencing back pain. The physical therapist stated "[p]hysical exam reveals no obvious pathology" to explain Plaintiff's continued symptoms. Tr. 343-44.

On this record the Court finds the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided

clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when he partially rejected Dr. Carey's opinion.

Plaintiff asserts the ALJ erred when he partially rejected Dr. Carey's June 2014 opinion.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On June 5, 2014, Dr. Carey conducted a musculoskeletal consultative examination of Plaintiff. Dr. Carey reviewed the notes of Plaintiff's office visits with Drs. Yoder, Gabrielle, and Bellen and conducted a physical examination of Plaintiff. Dr. Carey noted Plaintiff was able to walk into the examination room, transfer from a seated to standing position, and transfer to the examination table without difficulty. Tr. 289. Plaintiff showed "some hypertonic paraspinal muscles in the T7 through L2 region of the right side

15- OPINION AND ORDER

of his back." Tr. 289. Dr. Carey, however, did not note any significant atrophy, and "ROM testing reveal[ed] normal flexion, extension and side bending." Tr. 289. Dr. Carey concluded "[t]he severity of [Plaintiff's] pain is not consistent with objective findings on exam, although the reported complaints are episodic and [Plaintiff] does not seem to be in an episode currently." Tr. 289. Dr. Carey concluded Plaintiff does not have any limitations in standing, sitting, walking, reaching, handling, or fingering; Plaintiff is able to climb, balance, stoop, kneel, crouch, and crawl frequently; and Plaintiff is able to lift 50 pounds occasionally and 25 pounds frequently "unless having a . . . spasm, which would [limit Plaintiff to lifting or carrying] less than 10 pounds if he is able to function at all." Tr. 289-90.

The ALJ gave partial weight to Dr. Carey's opinion. Specifically, the ALJ rejected the portion of Dr. Carey's opinion in which he found Plaintiff's "back pain symptoms would sometimes be incapacitating or would limit lifting to less than 10 pounds." Tr. 26. The ALJ noted Dr. Carey failed to indicate "any frequency for the incapacitating episodes of back pain, which limits the weight given to this portion of [his] opinion." Tr. 26. In addition, the ALJ noted the record reflects heavy lifting such as moving a heavy flower pot, overdoing it with weights, and laying carpet exacerbates Plaintiff's back pain, and, therefore, "it can be inferred that if [Plaintiff] was limited in lifting and carrying it would be unlikely

16- OPINION AND ORDER

that he would experience persistent exacerbations in back pain to the extent that it would completely disrupt his ability to maintain fulltime employment." Tr. 26.

The Court concludes on this record that the ALJ did not err when he partially rejected Dr. Carey's opinion because he provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 11th day of December, 2018.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge